RECEIVED

JUL 1 9 2010

U.S. MAGISTRATE
JUDGE

CARLIE CHRISTENSEN, Acting United States Attorney (#633)
ERIC G. BENSON, Assistant United States Attorney (#10414)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

---

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

---

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GOMER NUNEZ-MENDOZA,<br>a.k.a. "PELON,"<br><br>Defendant. | FELONY COMPLAINT<br><br>: Magistrate Case No.: 2:10-MJ-194 DN<br><br>: VIO: CONSPIRACY TO DISTRIBUTE<br>  METHAMPHETAMINE, 21 U.S.C. §<br>: 846.<br><br>: |

---

Before a United States Magistrate Judge for the District of Utah, appeared the

undersigned, who on oath deposes and says:

## COUNT I

### (21 U.S.C. § 846)

Beginning on or about a date unknown but no later than April 10, 2009 and

continuing through at least July 17, 2010, in the Central Division of the District of Utah

and elsewhere,

GOMER NUNEZ-MENDOZA, a.k.a. "PELON,"

defendant herein, did knowingly and intentionally combine, conspire, confederate, and

agree with others known and unknown to distribute 500 grams or more of a mixture or

substance containing methamphetamine, a Schedule II controlled substance, all in

violation of 21 U.S.C. § 846, and punishable pursuant to 21 U.S.C. § 841(b)(1)(A).

### AFFIDAVIT

This complaint is based on the following information.

Arthur D. Street, being duly sworn, deposes and says:

1.      I am an investigator or law enforcement officer of the United States within the

meaning of Title 21, United States Code, Section 878, who is empowered to conduct

investigations of, and to make arrests for, offenses against the United States which are in

part enumerated in Title 21 and Title 18, United States Code.

2.      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and

have been so employed since June 1999.  I have had extensive training, which provided

me with a background and basis of knowledge relating to the investigation of drug related

crimes and the enforcement of laws concerning controlled substances as found in Title 21

United States Code (U.S.C.).  Currently, I am assigned to the DEA/Metro Narcotics Task

Force in Salt Lake City, Utah. Prior to this, I was assigned to the DEA New Orleans Field

Division for approximately four years.  During my employment with the DEA, I have

investigated illicit controlled substance trafficking; to include the importation,

distribution, manufacture and cultivation of illegal substances, in several locations

throughout the United States and internationally.  I have participated in numerous

narcotics investigations in both a surface and an undercover capacity.  I have participated

in drug trafficking investigations in which I have utilized all normal investigative

techniques as well as court authorized wire intercepts and other electronic surveillance

techniques.

3.      On April 10, 2010, Utah Highway Patrol Trooper Neil Ekberg stopped a black

2010 Chrysler 300 on eastbound Interstate 80, at milepost 150 for speeding and following

too close.  After Trooper Ekberg interacted with the driver of the vehicle, and noted

numerous indicators of drug trafficking, Trooper Ekberg deployed his K-9, Cica, who is

trained in the detection of narcotics, around the exterior of the vehicle.  Cica positively

indicated to the odor of illegal drugs on the rear of the vehicle with double paw scratching

and barking.  A search of the vehicle resulted in the seizure of approximately 12.5 pounds

of methamphetamine.

4.      After consulting with his/her attorney, they agreed to cooperate with the

government and provided a complete debrief of his/her activities leading up to the arrest.

The cooperating defendant said that he/she began purchasing methamphetamine from a

source of supply in Las Vegas, Nevada, approximately two and one half years ago and

has continued to make purchases from the same person every 60 to 90 days.  He/she said

that a typical load would be approximately 20 pounds of methamphetamine, but he/she

has purchased as much as 28 pounds at one time.  The cooperating defendant identified

his/her source of supply as a male Hispanic who goes by the nickname of "Pelon."

5.     The cooperating defendant provided detailed information about the prior purchases

from Pelon, and instructions to SA Arthur Street about how to contact Pelon to arrange

for another meeting and methamphetamine purchase.  According to The cooperating

defendant, he/she would send a text message, to a telephone number that Pelon had

previously provided, telling him that he/she needed tickets to a show, or seats at a party,

or something of that nature.  In each case, the number of seats or tickets represented the

number of pounds of methamphetamine that were desired to be purchased on the next

trip.  The cooperating defendant would continue to text Pelon with the date that he/she

would be in Las Vegas to complete the transaction.  Upon his/her arrival in Las Vegas,

the cooperating defendant would check into a hotel room then text Pelon the hotel and

room number information.  Each and every time, Pelon would come to the hotel room and

meet with the cooperating defendant.  The cooperating defendant would give Pelon half

the money for the requested methamphetamine.  Pelon would leave and return to the room

approximately 8 to 12 hours later with the requested amount of methamphetamine.  For

example, during their last meeting on April 9, 2010, Pelon arrived at the Sahara Hotel at

approximately 11:00 pm, and met with the cooperating defendant.  He/she gave Pelon

$88,000 cash in the hotel room.  He left the hotel and returned approximately 8 hours

later, on April 10, 2010, with 12.5 pounds of methamphetamine.

6.     At the completion of each transaction Pelon provides a new SIM card to the cooperating defendant for his/her telephone. This SIM card is programmed with a telephone number for a phone which Pelon will utilize for communication with the cooperating defendant to arrange future transactions. Pelon utilizes the new phone number only for communications with the cooperating defendant. At the conclusion of the deal on April 10, 2010, Pelon provided the cooperating defendant with a SIM card that had telephone number 702-408-5241 programmed into the SIM card, and told him/her to utilize the number for the next deal.

7.     Beginning in late May 2010, SA Street and TFO Adam Cleveland began communicating with telephone number 702-408-5241. These communications were text messages requesting another meeting in late June 2010 or early July 2010 to conduct a methamphetamine purchase of 18 to 20 pounds of methamphetamine. The communications continued in preparation for a meeting on July 17, 2010.

8.     On July 10, 2010, SA Street recorded a telephone call between the cooperating defendant and the person he/she knows as Pelon. SA Street called telephone number 702-408-5241 and the cooperating defendant on a threeway telephone call. During this call, the cooperating defendant immediately recognized the voice as that of Pelon. Pelon also recognized the voice of the cooperating defendant and they greeted each other. The cooperating defendant asked Pelon if the anticipated purchase of 18 pounds could be a little bit better quality than the 12 that was delivered during the last transaction. Pelon

said, "Ah, Ya, Ya...OK, Ya."

9.     Also during this call, the cooperating defendant told Pelon that it would be his/her

sister and her husband that would be coming to Las Vegas to conduct the transaction.

This in fact was two DEA Agents acting in an undercover capacity. Pelon was expecting

the meeting would occur on Sunday July 17, 2010 at an undetermined hotel in Las Vegas.

10.     On July 16, 2010, SA Street sent several text messages to Pelon requesting that he

call as soon as possible. On Saturday July 17, 2010, TFO Snelgrove called Pelon on the

same telephone number. TFO Snelgrove told Pelon that the car had broken down and

they were in St. George, Utah. Pelon said he was at work and would call back in the

afternoon. Conversations continued between TFO Snelgrove, GS Susan Thomas, and

Pelon requesting him to travel the St. George to pick up the money for the anticipated 18

pound methamphetamine transaction.

11.     On July 17, 2010, at approximately 10:18 p.m., Pelon arrived at the Best Western

Hotel at 1129 South Bluff Street, St. George, Utah, and came to room 224. Pelon entered

the room and met with undercover officer (UC) Snelgrove. UC Snelgrove again asked

Pelon if the quality of the 18 pounds would be better than the 12 pounds that the

cooperating defendant had gotten from him last time. Pelon said the quality would be

better than before. The conversation continued about future purchases. UC Snelgrove

gave the arrest signal and Pelon was taken into custody. He was identified as Gomer

NUNEZ-Mendoza. Incident to his arrest, SA Street searched Nunez-Mendoza. SA Street

located a cellular telephone utilizing telephone number 702-408-5241 in his left front

pant pocket. SA Street also located another cellular telephone in his right front pant

pocket, telephone number 702-427-8120, that had a telephone number utilized by a family

member of the cooperating defendant in the recent call list. Earlier on July 17, 2010,

Nunez-Mendoza called the cooperating defendant to confirm the story that was being told

by the undercover officers.

12.     On July 19, 2010, SA Street contacted the cooperating defendant and directed

him/her to access the Washington County Utah jail website. Once on the website,

everyone that has been booked in the last 48 hours is displayed. The cooperating

defendant was told to scroll through the pictures and report if he/she recognized the

person known as Pelon. The cooperating defendant immediately told SA Street that

Gomer Nunez-Mendoza is the person that he/she knows as Pelon.

13.     Laboratory testing indicated that the 12.5 pounds of methamphetamine seized from

the cooperating defendant on April 10, 2010, and supplied by Nunez-Mendoza was 45 %

pure, resulting in 2585 grams of pure methamphetamine.

        Based on the foregoing, your Complainant has probable cause to believe that

Gomer Nunez-Mendoza has committed the crime of Conspiracy to Distribute

Methamphetamine.

DATED this 19th day of July, 2010.

_____

Arthur Street, Special Agent
Drug Enforcement Administration


SUBSCRIBED AND SWORN TO BEFORE ME this 19th day of July, 2010.

_____

DAVID O. NUFFER
United States Magistrate Judge
United States District Court


APPROVED:

CARLIE CHRISTENSEN
Acting United States Attorney

_____

ERIC G. BENSON
Assistant United States Attorney

-8-